United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MACARIO JIMENEZ-CORONA,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 13-CR-00798-LHK-3<br>Case No. 16-CV-02015-LHK<br><br>**ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Re: Dkt. No. 138 (13-CR-00798-LHK-3)[1]<br>Re: Dkt. No. 1 (16-CV-02015-LHK) |

On April 15, 2016, Petitioner Macario Jimenez-Corona ("Petitioner"), proceeding *pro se*, filed a motion pursuant to 28 U.S.C. § 2255 challenging his sentence on the grounds that he received ineffective assistance of counsel. *See* ECF No. 138 ("Mot."). Subsequently, on November 3, 2016, this case was reassigned to the undersigned judge. ECF No. 147.

On January 23, 2017, the Court issued an order directing the government to respond. ECF No. 152. On April 28, 2017, Petitioner filed a Memorandum in Support of his Motion to Vacate ("Memorandum"). ECF No. 160 ("Memo."). Thereafter, the government filed its Opposition on

---

[1] All docket entries in this Order are to Case No. 13-CR-00798-LHK unless otherwise noted.

June 23, 2017, ECF No. 161 ("Opp."), and Petitioner filed a reply on July 24, 2017. ECF No. 162 ("Reply").

Having considered Petitioner's motion, the parties' briefing, the record in this case, and the relevant law, the Court DENIES Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## I. BACKGROUND

### A. The Indictment and Petitioner's Plea Agreement

U.S. District Judge Ronald M. Whyte presided over Petitioner's underlying criminal case and sentencing. This case was reassigned to the undersigned judge because Judge Whyte assumed inactive status on November 1, 2016.

On December 11, 2013, Petitioner was indicted in the Northern District of California by a federal grand jury. *See* ECF No. 18. Petitioner was indicted for one count of conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846, and one count of attempting to possess 500 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. *See id.* at 1–3. On March 12, 2014, a superseding indictment was filed. ECF No. 39. However, the superseding indictment left the charges against Petitioner unchanged. *See id.* Thereafter, on March 11, 2015, the government filed a superseding felony information charging Petitioner with one count of attempting to possess methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. ECF No. 98. This superseding felony information did not allege a quantity of methamphetamine. *See id.*

On March 16, 2015, with the assistance of counsel, Petitioner pleaded guilty to one count of attempting to possess methamphetamine with intent to distribute—which, as discussed above, was the only count in the superseding information. *See* ECF No. 104 ("Plea Agreement"). Petitioner executed a written plea agreement pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(C). *Id.* Rule 11(c)(1)(A) provides that where a defendant pleads guilty

to a charged offense or a lesser or related offense, the plea agreement may specify that the government will "not bring, or will move to dismiss, other charges" against the defendant. Further, Rule 11(c)(1)(C) provides that where the parties "agree that a specific sentence . . . is the appropriate disposition of the case . . . such a recommendation or request binds the court once the court accepts the plea agreement."

Petitioner's plea agreement provided, in relevant part:

*The Defendant's Promises*

1. I agree to plead guilty to a Superseding Information in the above-captioned matter charging me with attempting to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 846. I agree that the elements of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 are as follows: first, I intended to possess with intent to distribute a controlled substance; second, I knew that it was a controlled substance, specifically methamphetamine; and third, I did something that was a substantial step toward committing the crime. I agree that the maximum penalties are as follows:

   a. Maximum prison sentence             20 years

   b. Mandatory minimum prison sentence   None

   c. Maximum fine                        $1,000,000

   d. Maximum supervised release term     Life supervised release

   e. Minimum supervised release term     3 years

   f. Mandatory special assessment        $100

   g. Potential Deportation

   h. Mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. § 862 and § 862a

   i. Possible requirement to register as a drug offender.

   I acknowledge that pleading guilty may have consequences with respect to my immigration status if I am not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which I am pleading guilty. Removal and other immigration consequences

are the subject of a separate proceeding, however, and I understand that no one, including my attorney or the district court, can predict to a certainty the effect of this conviction on my immigration status. I nevertheless affirm that I want to plead guilty regardless of any immigration consequences that may result from my guilty plea, even if the consequence is my automatic removal from the United States.

2. I agree that I am guilty of the offense to which I am pleading guilty . . . .

   g. I stipulate and agree that the total weight of methamphetamine attributable to me for the purpose of determining relevant conduct is 3 kilograms of actual methamphetamine.

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence. I waive any defense based on venue, and I agree that this prosecution may be brought in the Northern District of California.

4. I agree to give up my right to appeal my conviction, the judgment, and any orders of the Court. I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea. I also agree not to seek relief under 18 U.S.C. § 3582.

6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered, unless the Court declines to accept the sentence agreed to by the parties. I agree that the government may withdraw from this Agreement if the Court does not accept the agreed-upon sentence set out below. I agree that if the Court does not accept the agreed-upon sentence set out below, the statute of limitations shall be tolled from the date I signed the Agreement until the date the Court does not accept the Agreement. I understand that by entering into this Agreement: (a) I agree that the facts set forth in Paragraph 2 of this Agreement shall be admissible against me under Fed. R. Evid. 801(d)(2)(A) in any subsequent proceeding, including at trial, in the event I violate any of the terms of this Agreement, and (b) I expressly waive any and all rights under Fed. R. Crim. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of this Agreement in any such subsequent proceeding. I understand that the government will not preserve any physical evidence obtained in this case.

7. I agree that the Court will use the Sentencing Guidelines to calculate my sentence. I understand that the Court must consult the Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I agree that the Sentencing Guidelines offense level will be calculated as follows and that I will not ask for any other adjustment to or reduction in the offense level or for a downward departure or variance from the offense level and Guidelines range as determined by the Court. There is no agreement concerning my Criminal History Score.

   a. Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(2): . . . .    36

   b. Amount of drugs: methamphetamine (actual)    3 KG

   c. Acceptance of Responsibility: . . . .    -3

   d. Adjusted offense level:    33

8. I agree that a reasonable and appropriate disposition of this case, under the Sentencing Guidelines and 18 U.S.C. § 3553(a), and the sentence to which the parties have agreed, is as follows: 84 months of imprisonment, three years of supervised release (with conditions to be fixed by the Court) and a $100 special assessment. There is no agreement concerning any fine.

   . . .

12. I agree to remain in the custody of the United States Marshal pending my sentencing.

13. I agree that this Agreement contains all of the promises and agreements between the government and me. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

   . . .

*The Defendant's Affirmations*

18. I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney, and that my attorney has provided me with all the legal advice that I requested.

19. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

20. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and

   possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily and that no one coerced or threatened me to enter into this Agreement.

21. I confirm that I read this entire Agreement with the assistance of my attorney in the Spanish language.

Plea Agreement ¶¶ 1–21. Petitioner's plea agreement also contained an "interpreter certification" section in which Petitioner's criminal counsel, Lupe Martinez, certified that he was "fluent/literate in the Spanish language" and that he "accurately translated" the plea agreement to Petitioner. *Id.* at 9.

### B. Petitioner's Plea of Guilty

On March 16, 2015, pursuant to the binding plea agreement, Petitioner pleaded guilty before Judge Whyte to one count of attempted possession of methamphetamine with intent to distribute. *See* ECF No. 157 ("Plea Transcript"). A Spanish interpreter was sworn in at the beginning of this plea hearing in order to assist Petitioner during the hearing. *See id.* at 2. At the hearing, Judge Whyte and Petitioner engaged in the following colloquy:

THE COURT: Are you currently taking any kind of drug or medication or anything that affects your ability to think clearly and make decisions?

THE DEFENDANT: No.

THE COURT: Have you received a copy of the charges and discussed those charges with your attorney?

THE DEFENDANT: Yes.

THE COURT: And are you satisfied with your attorney?

THE DEFENDANT: Yes.

THE COURT: And have your conversations with your attorney been in Spanish?

THE DEFENDANT: Yes.

THE COURT: And, Mr. Martinez, you're fluent in Spanish; correct?

MR. MARTINEZ: Fluent and literate, yes, your honor.

THE COURT: All right. I've been handed what's called a plea agreement. Did you

6
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

sign this plea agreement?

THE DEFENDANT: Yes.

THE COURT: Did someone read it to you in Spanish before you signed it?

THE DEFENDANT: Yes.

THE COURT: And did you fully discuss it with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you feel you understand it?

THE DEFENDANT: Yes.

THE COURT: Now, this plea agreement is what's called a binding plea agreement. What that means is that if I accept your plea of guilty and this agreement, I'm required by law to sentence you in accordance with it.
    Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If I were to determine that I couldn't, in good conscience, approve the agreement, I'd have to let you withdraw your guilty plea.
    Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Has anyone tried to force you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anybody promised you anything in order to get you to plead guilty, other than what's contained in the plea agreement?

THE DEFENDANT: No.

*Id.* at 3–5.

At the hearing, Petitioner acknowledged that he understood the maximum penalties under the law:

THE COURT: Now, the maximum sentence allowed by law for the offense is 20 years; a $1 million fine; a lifetime of supervised release, and supervised release is a period of time after one is released from custody in which his activities are restricted and he has to comply with certain requirements, and if he doesn't, then he can be placed back in custody for up to the maximum sentence allowed by law.
    There's a required supervised release term of at least three years; there's a

7
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

mandatory special assessment of $100; as a consequence of your plea, you might be deported, probably will be deported if you're not a citizen; there's also a denial of federal benefits because of your conviction; and you may be required to register as a drug offender.
Do you understand all that?

THE DEFENDANT: Yes.

*Id.* at 5–6.

Petitioner also acknowledged that he had the right to be represented by an attorney and that the court would appoint an attorney if he could not afford one, and that he understood he was giving up his rights to plead not guilty, to a jury trial, to present defenses at that trial, to appeal, and to collaterally attack his conviction and sentence:

> THE COURT: Now, you've also given up any right to appeal your conviction or sentence in this plea agreement. What that means is that if I accept the plea agreement and you're sentenced in accordance with it, you can't appeal that or object to that later on because of whatever reason.
> In other words, you're stuck with what you get. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. There is one exception to that, and that is if you should find that your attorney was ineffective under our Constitution and you wish to try and set your conviction or sentence aside because of that, you can file such a motion or request and, if successful, you could get your conviction or sentence set aside.
> But that's the only basis you could. Otherwise you're stuck with what you get. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: Now, you have certain rights. You have the right to plead not guilty, to continue in that plea and have this case go to trial.
> If the case went to trial, you'd be entitled to a trial by a jury. A jury is composed of 12 citizens who would be called in to hear your case. You would be presumed innocent and you could not be found guilty until and unless the government proved your guilt beyond a reasonable doubt.
> You'd have the right to the assistance of a lawyer at no charge if you couldn't afford a lawyer. You'd have a right to hear, face, question, and cross-examine any witnesses or evidence presented by the government.
> You'd have the right to testify yourself and offer evidence if you wished; on the other hand, if you wanted to remain silent, you could do so and your silence

8

could not be commented on or held against you.
Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You also have the right to have the Court order witnesses to appear if you make that request.
Do you understand that?

THE DEFENDANT: Yes.

*Id.* at 6–7, 8–9.

Additionally, a Spanish interpreter was sworn in at the beginning of this plea hearing in order to assist Petitioner during the hearing. *See id.* at 2.

### C. Petitioner's Sentencing

Judge Whyte sentenced Petitioner on June 8, 2015. *See* ECF No. 156 ("Sentencing Transcript"). At sentencing, after hearing from Petitioner, defense counsel, and government, Judge Whyte stated his intent to sentence Petitioner to the sentence agreed upon by Petitioner and the government in the binding plea agreement: 84 months of imprisonment, three years of supervised release, and a $100 special assessment. Sentencing Transcript at 1–7. Then, Judge Whyte asked whether there was any legal reason why this sentence should not be imposed on Petitioner. *Id.* at 7. Both counsel answered in the negative. *Id.* As a result, Judge Whyte imposed the agreed-upon sentence on Petitioner. *Id.*

Subsequently, on April 15, 2016, Petitioner filed a motion to reduce his sentence under 18 U.S.C. § 3582 based on Amendment 782 to the United States Sentencing Guidelines, which reduced all drug offense levels by two levels effective November 1, 2014. *See* ECF No. 140. Judge Whyte denied Petitioner's § 3582 motion on July 7, 2016. ECF No. 145.

## II. LEGAL STANDARD

A § 2255 motion to set aside, correct or vacate a sentence of a person in federal custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

9
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

collateral attack." 28 U.S.C. § 2255(b). Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (internal quotation marks omitted). A court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief. *See Howard*, 381 F.3d at 877.

## III. DISCUSSION

In his § 2255 motion, Petitioner asserts that he received ineffective assistance of counsel during the plea process of his underlying criminal case. Specifically, Petitioner alleges that he "received little or no assistance from [his] lawyer," and that his lawyer "just put pressure on [Petitioner] to sign a plea." Mot. at 5. Moreover, Petitioner alleges that he "did not have access to the discovery on [his] case" because his lawyer "did not provide it." *Id.* Petitioner further states that he "had very little time available to discuss [his] case with [his] lawyer[] since [his lawyer] rarely visited [him]," and that his lawyer "did not even request a bond for [him]." *Id.* Finally, Petitioner alleges that "[b]ecause of [his] limited knowledge of the English language, and the laws, together with the ineffective counsel, [Petitioner] did not fully understand the extent of [his] rights, [he] gave up [his] appeal rights, [he] signed a plea under pressure." *Id.* However, for the reasons stated below, the Court finds that Petitioner has fallen well short of demonstrating that he is entitled to any relief under § 2255 based on his ineffective assistance of counsel claim.

A petitioner's claim of ineffective assistance of counsel is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim, a

10
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

petitioner must show: (1) that counsel's representation fell below the range of competence demanded of attorneys in criminal cases; and (2) that the petitioner was prejudiced by counsel's representation. The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In order to demonstrate prejudice, the petitioner must "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* test also applies to ineffective assistance of counsel claims "arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In a challenge to a guilty plea based on ineffective assistance of counsel, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's alleged errors and coercion, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58–59.

In the instant case, the Court finds that Petitioner has failed to satisfy either prong of the *Strickland* test. First, as to *Strickland*'s performance prong, the Court finds that Petitioner has not shown that his former counsel's performance fell below an objective standard of reasonableness because *all* of Petitioner's allegations regarding his former counsel's performance are contradicted by the plea agreement that Petitioner signed and the sworn statements that Petitioner made at his plea hearing. Specifically, contrary to Petitioner's instant grievances about his former counsel's performance—which include complaints about allegedly being pressured to plead guilty, not being given access to discovery, receiving little assistance or face time, and counsel's failure to request a bond for Petitioner, Mot. at 5—Petitioner expressly affirmed in his plea agreement that (1) Petitioner "had adequate time to discuss this case, the evidence, and the Agreement with" his former counsel; (2) Petitioner's former counsel "provided [Petitioner] with all the legal advice that [Petitioner] requested"; and (3) Petitioner's "decision to plead guilty [was] made voluntarily, and no one coerced or threatened [Petitioner] to enter into this Agreement." Plea Agreement ¶¶ 18, 20. Further, during the plea hearing, Petitioner expressly affirmed that he was "satisfied with [his] attorney," Plea Transcript at 3, and that no one had "tried to force [him] to plead guilty" or

11

"promised [him] anything in order to get [him] to plead guilty." *Id.* at 5. Moreover, although Petitioner now alleges that he "did not fully understand the extent of [his] rights," Petitioner expressly affirmed during the plea hearing that by pleading guilty pursuant to the written plea agreement, Petitioner understood that he was giving up his rights to plead not guilty, to a jury trial, to present defenses and call witnesses at trial, to have the Court order witnesses to appear, to cross-examine the government's witnesses, to question the government's evidence, to appeal, and to collaterally attack his conviction and sentence. *See* Plea Transcript at 6–7, 8–9. Finally, although Petitioner mentions his "limited knowledge of the English language" in his § 2255 motion, Mot. at 5, Petitioner confirmed in his plea agreement that he "read th[e] entire Agreement with the assistance of [his] attorney in the Spanish language." Plea Agreement ¶ 21. Further, a Spanish interpreter was sworn in at the beginning of Petitioner's plea hearing in order to assist Petitioner during the hearing, *see* Plea Transcript at 2, and during that hearing, Petitioner expressly affirmed that (1) all of Petitioner's conversations with his former counsel had been in Spanish; (2) the plea agreement had been read to Petitioner in Spanish before Petitioner signed it; and (3) Petitioner had fully discussed the plea agreement with his former counsel and understood its contents. *Id.* at 3–4.

Thus, while not insurmountable, the plea record in the instant case constitutes a formidable barrier to Petitioner's collateral attack on his guilty plea, and overcoming that barrier requires more than conclusory allegations. *Blackledge v. Allison*, 431 U.S. 63, 64 (1977). This is because the statements that Petitioner made under oath and in open court are accorded significant weight. "[S]olemn declarations in open court carry a strong presumption of verity." *Shah v. United States*, 878 F. 2d 1156, 1162 (9th Cir. 1989) (quoting *Blackledge*, 431 U.S. at 74).

In contrast to the unambiguous terms of the plea agreement and Petitioner's statements on the record at his plea hearing, Petitioner offers only his own unsupported allegations regarding his former counsel's purportedly deficient performance and his own lack of understanding of his rights. These allegations fall far short of overcoming the strong presumption of verity that

12
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

attaches to the statements that Petitioner made under oath and in open court described above—all of which contradict the unsupported allegations in Petitioner's § 2255 motion. As a result, Petitioner's allegations regarding his former counsel's purportedly deficient performance are not credible in light of the evidence in the record indicating that (1) Petitioner was satisfied with his former counsel's representation; (2) Petitioner was not pressured by his former counsel to plead guilty; and (3) Petitioner understood the rights that he was giving up by pleading guilty. Accordingly, the Court concludes that Petitioner has not demonstrated that his former counsel's performance fell below an objective standard of reasonableness.

Second, Petitioner has also failed to make a sufficient showing under *Strickland*'s prejudice prong. As discussed above, in order for a petitioner to demonstrate that he was prejudiced by ineffective assistance of counsel during his plea process, the petitioner must show that there is a reasonable probability that, but for counsel's alleged errors and coercion, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58–59. In the instant case, Petitioner has neither alleged nor explained why he would have insisted on going to trial absent his former counsel's purportedly deficient performance.

Further, any allegation that Petitioner would have gone to trial but for his former counsel's alleged errors is undermined by the substantial amount of evidence that the government had against Petitioner and by the fact that Petitioner avoided the possibility of receiving a significantly more severe sentence by pleading guilty. As to the government's evidence against Petitioner, the government had the following. First, at around 3:00 p.m. on December 1, 2013, law enforcement officers detained Petitioner—who had been sitting in a car that was parked in a parking lot—along with Petitioner's nephew, Juan Luis Jimenez-Castaneda, and another person, Arturo Cuevas-Quezadaz ("Cuevas")—both of whom had been inside of a car driven by Cuevas and parked next to Petitioner's car. *See* Plea Agreement ¶ 2. Second, the officers seized approximately eight kilograms of methamphetamine from Cuevas's car, and thereafter arrested Cuevas and Jimenez-Castaneda, but released Petitioner after some questioning. *See id.* Third, the officers found a

13
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

handwritten list of quantities and names inside Cuevas's car, and the second entry on that list was "3-Poya," which appeared to refer to a delivery of three kilograms to "La Polla"—Petitioner's nickname. *Id.*; ECF No. 121 ("PSR") ¶ 22. Further, the quantities listed added up to eight—which was approximately the number of kilograms of methamphetamine that had been found in Cuevas's car. *See* Plea Agreement ¶ 2. Fourth, later that evening, at around 6:30 p.m., law enforcement officers intercepted a telephone call from Ademar Becerril—the source of the methamphetamine found in Cuevas's car—to another speaker at a Mexican telephone number. *See id.*; PSR ¶ 24. During this phone call, Becerril told the other speaker that (1) "La Cincha" (Jimenez-Castaneda) and Cuevas had been arrested; (2) Petitioner ("La Polla") had been investigated but not arrested because Petitioner had told the officers that Petitioner was merely picking up his nephew (Jimenez-Castaneda); and (3) Petitioner was going to take three of the eight kilograms that Cuevas was delivering. *See id.* Fifth, and finally, on the following day (December 2, 2013), law enforcement officers intercepted a telephone call from Becerril to Petitioner during which (1) Becerril and Petitioner "discussed the bail set for Cuevas and Jimenez-Castaneda"; (2) Becerril stated "that he was getting a new telephone the next day"; (2) Petitioner "asked what time Becerril thought they could" arrange another drug transaction; and (3) Becerril "replied that he didn't think it could be done tomorrow because everything that had come out was gone" and indicated "that he could do another drug transaction the day after tomorrow." *Id.*; *see* PSR ¶ 25. In light of this significant physical and wiretap evidence tying Petitioner to the eight kilograms of methamphetamine found in Cuevas's car, any allegation that Petitioner would have insisted on going to trial instead of pleading guilty does not appear to be credible.

Additionally, as to the substantial benefits that Petitioner gained by pleading guilty, as discussed above, the original and superseding indictments alleged that Petitioner conspired to distribute 500 grams or more of methamphetamine and attempted to possess 500 grams of methamphetamine with intent to distribute. *See* ECF No. 18; ECF No. 39. This exposed Petitioner to a ten-year mandatory minimum prison sentence and a range of imprisonment of 135

14
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

months to 168 months under the United States Sentencing Guidelines. Petitioner's former counsel managed to negotiate a plea agreement under which Petitioner pleaded guilty to the single count charged in the superseding felony information—specifically, one count of attempting to possess methamphetamine with intent to distribute that did not allege a quantity of methamphetamine. *See* ECF No. 98. Pursuant to this plea agreement, Petitioner was sentenced to 84 months of imprisonment. Sentencing Transcript at 1–7. Thus, by pleading guilty instead of going to trial, Petitioner avoided at least 36 months of additional incarceration by receiving an 84-month prison sentence instead of the ten-year (120-month) mandatory minimum prison sentence to which he was originally exposed.

In sum, the Court finds that Petitioner is not entitled to any relief based on his ineffective assistance of counsel claim under § 2255 because he has failed to satisfy either prong of the *Strickland* test. Moreover, although Petitioner has requested an evidentiary hearing for his § 2255 motion, *see* Memo. at 11, Petitioner has not established that he is entitled to such a hearing. As discussed above, a court need not hold an evidentiary hearing if the petitioner's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. *See McMullen*, 98 F.3d at 1159; *see also United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998) (holding that the district court properly denied an evidentiary hearing on claims that failed to state a claim for relief under § 2255 as a matter of law). In the instant case, Petitioner's § 2255 motion presents no more than conclusory allegations, unsupported by facts and refuted by the record. Accordingly, the Court DENIES WITH PREJUDICE Petitioner's request for an evidentiary hearing. *See Farrow v. United States*, 580 F.2d 1339, 1360–61 (9th Cir. 1978).

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion to set aside, correct, or vacate his sentence pursuant to 28 U.S.C. § 2255 is DENIED WITH PREJUDICE. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right

15
Case No. 13-CR-00798-LHK-3
Case No. 16-CV-02015-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

as required by 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

Dated: August 27, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge